[Civ. No. 6718.   Second Appellate District, Division One.—October 19, 1931.]

MARY DELL CORYELL, Respondent, v. CLIFFORD F. REID, INC. (a Corporation), Appellant.

Joe Crider, Jr., McAdoo, Neblett, O'Connor & Claggett and E. H. Mitchell for Appellant.

Earl Wakeman for Respondent.

YORK, J.—This is an appeal by Clifford F. Reid, Inc., from a judgment entered after verdict of the jury against defendants Clifford F. Reid, Inc., a corporation, and E. D. Rosher, in an action to recover damages for injuries received by the plaintiff as the result of negligence of the defendants in the operation of an automobile. Defendant Rosher was the driver of the automobile at the time the plaintiff was injured. It was alleged in the complaint and there was evidence introduced to show that the plaintiff was requested by the defendant Clifford F. Reid, Inc., a corporation, to accompany the said driver, E. D. Rosher, on a trip in the automobile at the time of her injury. The question as to why and where she was injured and all the other questions raised as to the sufficiency of the evidence were decided by the jury upon evidence properly introduced in the trial of the case. ■ The accident occurred on June 25, 1927. The judgment was rendered on the seventh day of February, 1929, and the law which appellant claims should be considered in weighing the liability—according to its brief—was not in effect until midnight of August 14, 1929. There is no merit in appellant's contention that the provisions of section 141¾ of the California Vehicle Act, effective at midnight August 14, 1929, relating to the duty owing by a host to a guest is retroactive. (*Krause* v. *Rarity,* 210 Cal. 644, at p. 653 et seq. [293 Pac. 62] ; *Dermer* v. *Pistoresi,* 109 Cal. App. 310 [293 Pac. 78].)

■ There was sufficient evidence to justify the verdict and, therefore, the only question left for this court to discuss is the question as to the trial court's alleged error in instructing the jury ''as to appellant's liability, ignoring

the question of plaintiff's contributory negligence''. An examination of the record hardly discloses any evidence from which the jury could find that the plaintiff suffered any injury by reason of negligence on her part. However, the trial court instructed the jury properly on the question of the law as to contributory negligence of the plaintiff.

■ Point three in appellant's opening brief is that ''The court erred in admitting testimony that after the accident defendant Rosher said, 'It is my fault. I should not have been looking around.' '' The evidence shows that this statement was made by defendant Rosher immediately after the accident occurred. This court said in *Lloyd* v. *Boulevard Express*, 79 Cal. App. 406, at 411 [249 Pac. 837, 839] : ''His statements, if true, indicate that they were made before the excitement attending the accident had subsided. Questions as to the admissibility of such questions as part of the *res gestae* depend upon whether such statements are the emanations of the acts done, *before* the excitement usually incident to an accident causing great injury has subsided, or are the statements made *after* the excitement has subsided, and the witness has time to calculate a policy to be pursued. Here the statements were made at the scene of the accident, and in the presence of those suffering from its results, and in the presence of the wreckage the accident created. Again we hold that the trial court before whom the witness appeared is better prepared to pass upon the evidence upon which the admissibility of such statements depends than is an appellate court, and his ruling should not be disturbed unless he has abused his discretion. We cannot say from the evidence appearing in the record that the declarations of Mitchell were inadmissible. If the statement of the employee is spontaneous, that is, made at the time of the accident and during the excitement attending it, before the employee has time to reflect upon the consequences of his statement, or to fabricate evidence against his employer, it is admissible against the employer.'' (Also, see 10 R. C. L. 978, and 4 R. C. L., Perm. Supp., p. 2801.)

The judgment is therefore affirmed.

CONREY, P. J., Concurring.—I concur in the judgment. In addition to the matters discussed in the foregoing opinion there are some other points raised by appellant which per-

haps should be mentioned. I think that the evidence is sufficient to establish the fact that Rosher was both the ostensible agent and the actual agent of appellant, and not an independent contractor.

Appellant contends that the court erred in refusing appellant's offered instructions No. 7, No. 4 and No. 16. If appellant had attempted to comply with rule VIII, by printing in its brief the other instructions given which bear upon the subject covered by the refused instructions, possibly these assignments of error would not have been urged upon the court, and some time would have been saved. Upon the point urged with respect to refused instruction No. 16, I think that the law concerning ostensible agency as applied to this case was properly stated in plaintiff's instruction No. 1. (*Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, 421 [49 Pac. 559]; see, also, *Barton* v. *Studebaker Corp.*, 46 Cal. App. 707, at p. 721 et seq. [189 Pac. 1025].) Applying these decisions to the case at bar, I think that the court in said instruction properly instructed the jury as follows: "If you find from the evidence that prior to the accident the defendant Clifford F. Reid, Inc., held out or represented to the plaintiff Mary Dell Coryell that defendant Rosher was the agent or representative of such corporation for the purpose of transporting her to the tract of such corporation, and that she was induced by such representation to accompany the said Rosher to said place and that she had acted upon such representation on the day of the accident, then the defendant Clifford F. Reid, Inc., is liable for any damage inflicted upon or suffered by the plaintiff as a direct result of any negligence that may have been proved against the defendant Rosher while she was being transported by him to the tract of the company of Clifford F. Reid, Inc., if the plaintiff herself was free of negligence upon her own part."

HOUSER, J., Concurring.—I concur in the judgment. Although in accord with the conclusion reached by my associates, I cannot agree with that part of the main opinion herein to the effect that as part of the *res gestae* evidence was admissible as to what was said by defendant Rosher after the accident occurred, to wit: "It is my fault. I should not have been looking around."

Definitions are of little assistance. According to my recollection, in the published opinion of one of our comparatively early justices of the Supreme Court of this state, in substance it was declared that "definitions of the term *res gestae* are as numerous as the various cures for rheumatism, and about as useful". But what, to my mind, is of greater importance is the undeniable fact that by the greater weight of authority in this state evidence of declarations made, however soon after the completion of any act or transaction, are inadmissible as a part of the *res gestae*.

The opinion in the case of *People* v. *Ah Lee*, 60 Cal. 85, contains a most comprehensive explanation and illustration of the principles of law upon which the admissibility of evidence under the doctrine of *res gestae* depends. The precise point there at issue was whether statements made by a person *immediately after* he was stabbed were admissible in evidence. In ruling upon the question thus presented the court quoted with approval from a pamphlet written by Cockburn, C. J., in connection with an opinion theretofore rendered in the English case of *Rex* v. *Bedingfield,* 14 Cox C. C. 341, wherein it appeared that the prosecution offered to prove that some ten or fifteen minutes before her death a woman who had been attacked, on "coming from her house, at a distance of fifteen or twenty yards from her door, holding her apron to her throat, exclaimed: 'Oh, dear aunt, see what Bedingfield has done,' Bedingfield not being present at the time". A part of the pertinent language appearing in such pamphlet is as follows:

"Whatever act or series of acts constitute, or in point of time immediately accompany and terminate in the principal act charged as an offense against the accused, from its inception to its consummation or final completion, or its prevention or abandonment, whether on the part of the agent or wrongdoer in order to its performance, or on that of the patient or party wronged in order to its prevention, and whatever may be said by either of the parties during the continuance of the transaction, with reference to it, including herein what may be said by the suffering party, though in the absence of the accused, during the continuance of the action of the latter, actual or constructive, e. g., in the case of flight or applications for assistance, form part of the principal transaction, and may be given in evidence as part

of the *res gestae* or particulars of it; while, on the other hand, statements made by the complaining party, after all action on the part of the wrongdoer, actual or constructive, has ceased, through the completion of the principal act or other determination of it by its prevention, or its abandonment by the wrongdoer, such as, e. g., statements made with a view to the apprehension of the offender, do not form part of the *res gestae,* and should be excluded. . . . It is perfectly obvious that there is a limit to the time within which such statements must be made in order to be admissible in evidence as a part of the *res gestae.* But if made *after the termination of the act to which they refer,* they are merely narrative of a past transaction, *whether made within a minute or an hour afterward.* And 'where declarations offered in evidence are merely narrative of the past occurrence, they cannot be received as proof of the existence of such occurrence'. (1 Greenl. Ev. 110.) 'An act cannot be varied, qualified, or explained either by a declaration which amounts to no more than a mere narrative of the past occurrence, or by an isolated conversation held, or an isolated act done, at a later period.' (1 Taylor's Ev. 53.)''

After quoting extensively from such pamphlet, our Supreme Court in effect declared that statements made "*immediately after*" an occurrence did not constitute a part of the *res gestae* and were not admissible in evidence.

In the case of *Heckle* v. *Southern Pac. Co.,* 123 Cal. 441 [56 Pac. 56], the question presented to the court was whether the trial court had erred in granting a motion for a new trial on the ground that on the trial of the action error had been committed in sustaining an objection to the introduction of evidence as to what was said by a person who had been caught under a wheel of a car and was still under the wheel, held there firmly by the weight of the car, at the time he made the declarations sought to be introduced in evidence. Preceding a statement of the facts, the court made the following observation:

" . . . A declaration, to be admissible on that ground, must be *an undesigned part, or incident, of the occurrence in question.* It must be, in a general sense, contemporaneous with the main occurrence, although, in case of a sudden accident or attack, the declarations would not be inadmissible merely because the blow or collision immediately preceded it;

it must be the natural and spontaneous outgrowth of the main occurrence, and must exclude the notion of deliberation or calculation, or of design to manufacture evidence for future purposes; and, if it be a mere narrative of past events, it then is clearly within the category of inadmissible hearsay, and must, beyond doubt, be excluded. . . . "

In *Williams* v. *Southern Pac. Co.*, 133 Cal. 550 [65 Pac. 1100, 1102], it appears that a witness was permitted to testify regarding statements made "soon after the accident". With reference to the application of the *res gestae* rule, the court said:

"The ruling admitting these declarations was clearly erroneous. It is contended that they were part of the *res gestae*. . . . Statements are like other circumstances *when they are part of it,* and if the whole affair cannot be rightly understood without them, they are competent. Expressions of persons who are actors, *made during the occurrence,* may generally, but not always, be proved. If spontaneous, and caused by the event, they may nearly always be shown. But if, afterwards, *no matter how shortly afterwards,* there is an attempt to explain what has happened, or to account for it, or to defend one's self, or the like, it is incompetent, and inadmissible as *res gestae. A narrative, even if given during the occurrence, is inadmissible.* (*Heckle* v. *Southern Pac. Co.*, 123 Cal. 441 [56 Pac. 56].) . . . "

In *Lissak* v. *Crocker Estate Co.*, 119 Cal. 442 [51 Pac. 688], the plaintiff recovered a judgment against the defendant for personal injuries sustained by the falling of an elevator in which plaintiff at the time was a passenger. At the trial of the action a witness testified that after the elevator had stopped and the plaintiff had been taken "out of the cage", the elevator operator stated that "he lost all control, and the connection cord got broke". In ruling that such statement "formed no part of the *res gestae* and should have been excluded by the (trial) court", the Supreme Court cited the case of *Lane* v. *Bryant*, 9 Gray (Mass.), 245 [69 Am. Dec. 282], in which the facts were similar to those in the instant case in that it appeared that the plaintiff was injured in a collision between his carriage and that of the defendant, and a witness was asked what the defendant's servant said to the plaintiff at the time of the accident, and while the plaintiff was being taken from the carriage, to

which he replied that the servant said that the plaintiff was not to blame. In ruling upon the admissibility of such testimony the Supreme Court of Massachusetts said that "The declaration of the defendant's servant was incompetent, and should have been rejected. It was made after the accident and the injury to the plaintiff's carriage had been done. It did not accompany the principal act on which the whole case turned, or tend in any way to elucidate it. It was only the expression of an opinion about a past occurrence and no part of the *res gestae*. It is no more competent because made *immediately after the accident than if made a week or a month afterward.*" (Citing authorities.)

In the murder case of *People* v. *Wong Ark*, 96 Cal. 125 [30 Pac. 1115], a police officer testified that "after the shooting" he ran a distance of about 140 yards (which certainly should have required not more than thirty seconds) to a place where the woman who had been shot was lying on a porch and that then and there, not within the presence of the defendant, he "had a conversation with her for possibly half a minute, or a little longer", in which conversation the woman declared that defendant was the man who shot her. In ruling that such declaration was not admissible in evidence as a part of the *res gestae,* the following was quoted from Wharton on Evidence: "The distinguishing feature of declarations of this class is, that they should be *necessary incidents of the litigated* act,—necessary in this sense, that they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. . . . The rule before us, however, does not permit the introduction, under the guise of *res gestae,* of a narrative of past events, *made after the events are closed,* by either the party injured or by the bystander." Thereafter the opinion in the cited case continues: "At the time the declaration referred to was made, the shooting had been done, and the assailant had escaped from the scene of the shooting. The declaration was not the fact talking through the party, but the party's talk about the facts. . . . "

In a separate concurring opinion, Mr. Justice Garoutte elaborated upon the question as to whether the declaration made by the woman was a part of the *res gestae*. Therein he took occasion to criticise certain authorities and to distinguish others. Among other authorities cited, Justice

Garoutte referred to the case of *Commonwealth* v. *McPike,* 3 Cush. (Mass.) 181 [50 Am. Dec. 727], in which it appeared that "the attorney for the commonwealth called Benjamin D. Shaw as a witness, who testified that about the time mentioned by the preceding witness, he heard the voice of a woman crying 'Murder!' as she was going upstairs. He got up, and going towards the room, met the last witness coming out, who told him not to go up, for the defendant would kill her, and then he saw the defendant coming out of the room. The witness then went for a watchman, and coming back, went immediately up to the room where the deceased was, and there found her on the floor bleeding profusely. She asked the witness for some water, and to go for a physician. She said that John (meaning the defendant) had stabbed her, and told the witness what she wanted done if she died." The following comment is then made by Justice Garoutte: "Upon appeal, the court held the statement of the deceased admissible, upon the ground that the period of time at which these acts and statements took place *was so recent after the receiving of the injury* as to justify its admission as part of the *res gestae* and upon the further ground that in the admission of testimony of this character much must be left to the exercise of the *sound discretion* of the presiding judge. *These grounds are untenable. Neither upon principle nor authority does the fact (of itself) that the statement was made within a very few moments after the injury was received stamp such statement as res gestae.* As to the second ground relied upon to support the admission of the evidence the same court said in *Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. (Mass.) 41, referring to the admission of evidence as *res gestae*: 'Its admission *is not left to the discretion of the presiding judge,* as has been sometimes supposed, but is governed by principles of law which must be applied to particular cases as other principles are applied in the exercise of a judicial judgment.' " Mr. Justice Garoutte then restated the facts and continued:

"It is entirely apparent that her statement as to the stabbing was the narrative of a past event, and should not have been admitted as *res gestae*. It was no more a part of the *res gestae* than if the statement had been made to the witness upon his return after calling a physician."

After further comment on the English case of *Rex* v. *Bedingfield*, 14 Cox C. C. 341, in part Justice Garoutte said:

"No rule can be laid down for all cases. Each case must be tested to a great extent by its own facts, but the fact that the statements may have been made *immediately subsequent to the wounding* is in no sense true *indicia* that they are *res gestae*. When the statements are the spontaneous outgrowth of the main fact,—when, as Mr. Wharton says, 'they are the act talking for itself, and not what people say when talking about the act',—then they become *res gestae*, otherwise they are merely narrative of a past event, and in the interest of truth and justice should be rejected. . . .

"In this case the 'thing done' was the shooting. The officer was not present at the time, but was 140 yards distant. He traveled that distance, and found the deceased lying upon the sidewalk, and several Chinese in her immediate presence; an opportunity for reflection and recollection had presented itself; and corrupt influences may have suggested her statement. It was a statement that defendant did the shooting. *It was a narrative of a past event; in no respect an automatic or spontaneous incident of the shooting; no part of the thing done; and should not have been placed before the jury.*"

In the case of *Boone* v. *Oakland Transit Co.*, 139 Cal. 490 [73 Pac. 243, 244], it appears that, over the objection of the defendant, a witness was allowed to testify that when the car stopped after the accident, and after the conductor had gone from the place where it stopped to the place where the defendant lay, and again returned to the car, the witness had a conversation with the conductor, in which the latter said: "These ladies seem to blame me—seem to think it is my fault." With reference thereto, in part the Supreme Court said: "This was not a part of the *res gestae*. It happened *after* the accident, and after a sufficient time had elapsed for the defendant to walk almost half a block and back again. It was not even a relation of the facts which caused the accident, but was a mere narrative of the opinion of third persons as to who was at fault. Its admission was against all the rules with relation to *res gestae*." (Citing authorities.)

To like effect, see, also, *Luman* v. *Golden A. C. M. Co.*, 140 Cal. 700, 709 [74 Pac. 307]; *Kimic* v. *San Jose etc. Ry. Co.*, 156 Cal. 379, 391 [104 Pac. 986]; *Willard* v. *Valley Gas & F. Co.*, 171 Cal. 9, 16 [151 Pac. 286], and authorities respectively there cited.

It thus becomes apparent that the application of the *res gestae* doctrine should be limited to acts or declarations which are necessary incidents of the completed act or· transaction, and which act transpires, or which declarations are made, preceding in time the completion or consummation of the main act or transaction; and that in the operation of such principle, in arriving at a proper conclusion as to whether any given act or declaration constitutes a part of the *res gestae* of the main act or transaction, the element of time within which such incidental act has been performed, or such incidental declaration has been made, following the completion or consummation of the main act or transaction, should not be given consideration. In other words, the element of time is a false quantity in the problem which is presented for solution by the trial court. Nor should the legal determination of the question be left to the sound discretion of the trial court. The decision of such question should be founded upon principles of law and based solely upon the ultimate fact of whether the given act or the declaration is a necessary incident to the main act or transaction which in point of time preceded the completion of such main act or transaction.

Reasoning from the judicial declarations contained in the cited authorities of this state, I am led to the conclusion in the instant case, that the alleged statement made by Mr. Rosher, after the accident in question had occurred, in substance, that it was his fault and that "he should not have been looking around", was no part of the *res gestae* and consequently was erroneously admitted in evidence. But, in view of the further fact that Rosher was a party defendant to the action, it would seem clear that, at least as far as he was concerned, his statement was properly receivable in evidence as a declaration or admission against interest. Nor does it appear that any motion was made by the other defendant that the effect or the substance of the questioned evidence be limited in its application to the one defendant. Furthermore, unquestioned evidence was received from other witnesses which, if not in express terms, at least in sub-

stance, was to the same effect as the conclusion contained in the statement that the accident occurred because of the fault of the defendant Rosher, and that "he should not have been looking around". It therefore becomes obvious that no prejudice to the defense of either of the defendants arose from the reception of the evidence of which appellants here complain.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 16, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1931.