[Civ. No. 12325. First Dist., Div. One. May 5, 1943.]

CHRISTIAN SIEBEL, Respondent, v. ED SHAPIRO et al., Appellants.

510

John J. Taheny and Alfred M. Miller for Appellants.

Shirley, Robb & Saroyan for Respondent.

WARD, J.—This is an appeal by defendants, the owner of a used car sales lot and his employee, from a judgment in the sum of $6,500 for injuries received on the premises by plaintiff, a prospective purchaser.

The sales lot is located on the southeast corner of Eddy Street and Van Ness Avenue in San Francisco. It slopes from north to south and from west to east, the slope on the east end of the lot being rather steep from north to south. On the day of the accident plaintiff and his son, who were shopping for a used car, entered the sales lot of appellant Shapiro with the intention of looking over the cars there on display. All available space was occupied by sixty-five or seventy cars and there were a number of people on the lot, including several salesmen, mechanics and a used car appraiser and buyer of Shapiro. The plaintiff, accompanied by his son, decided to start their inspection at the back (east) part of the lot. They entered the premises from the Van Ness Avenue side, walked across the lot and to the northeast corner thereof. They then walked south, down a row of cars along the east side of the lot. At the southeast corner of the lot is a tool shed, and directly to the north three or four feet, parked parallel thereto and facing the west was a Dodge truck. They walked around the rear of the truck, then to the west along the side of the car and between the truck and the tool shed. Just as plaintiff was passing the left front wheel of the truck another car crashed down the incline into its right front wheel. The col-

lision pushed the front of the truck south several feet, and plaintiff was knocked to the ground and his right leg crushed by the left front wheel.

The cause of the collision is given as follows: Another prospective purchaser, a man sixty-eight years of age, had asked appellant Lewis, employee of Shapiro, whether there were any 1937 Chevrolet coupes on the lot. Lewis, busy with a customer, indicated one, and there is evidence that he told the man, Gjamara, to go over and try it; that he would be with him in a minute. Lewis admitted to a police officer that in substance he had given such a direction, but that he had no idea Gjamara "was going to drive the car." The Chevrolet was parked on the east side of the lot, on the grade, facing south and headed downhill toward the right side of the truck. It had been so parked by appellant Lewis a short time before. The emergency or parking brake had not been set, nor had the wheels of the car been blocked notwithstanding its position. The car had also been left in second gear, the keys in the ignition switch as was the custom at the lot. Gjamara testified that, after looking the car over he got in, felt the gear shift, found it to be loose and assumed it to be in neutral. He did not touch the emergency or parking brake, but assumed it was set. He turned on the ignition and stepped on the starter. Immediately the car leaped forward, ran down the grade and crashed into the truck. Gjamara, partially deaf, and unable to speak the English language very well, testified that the only car he had ever operated was a 1926 Chevrolet which he purchased in 1930 and drove until 1939.

On the trial of the action, three special questions were submitted to the jury at the request of defendants. They were as follows: "1. Did Peter Gjamara have the express or implied permission of Ed Shapiro to drive the Chevrolet at the time of the accident? 2. Did defendant Ed Shapiro fail to exercise ordinary care in the operation of his used car lot at the time and place in question? 3. If your answer to question No. 2 is 'Yes'—did such failure to exercise ordinary care proximately cause Christian Siebel's injuries?" Each question was answered in the affirmative.

The opening brief of appellants states: "The defendant Shapiro appeals on the following grounds: 1. That the trial court erred in excluding evidence that he had forbidden his salesmen to allow any prospective purchaser to start up by himself or drive any automobile on the sales lot. 2. That the

trial court erred in admitting against him over his objections hearsay testimony as to statements of the defendant Lewis made after the accident. 3. That the court erred in the admission and exclusion of other evidence. 4. That the evidence is insufficient as a matter of law to establish that he directly or indirectly gave Gjamara permission to start or operate the automobile. 5. That the evidence is insufficient as a matter of law to establish that Shapiro was negligent. 6. That the evidence shows as a matter of law that the sole proximate cause of the accident was negligence of Gjamara. 7. That the evidence is insufficient as a matter of law to establish that he or Lewis knew or should have known that defendant Gjamara was incompetent. 8. That the trial court erred in the giving and refusing of instructions. 9. That section 402 of the Vehicle Code, which makes an owner liable for the negligence of one driving with his permission, does not apply to private property. The defendant Lewis appeals on the last six of these grounds and also on the ground that since he was merely a salesman, and is not shown to have any control over the used car lot, he is not liable by reason of the manner of its operation.''

In discussing the above, further subdivisions of error are presented, and in addition it is claimed that motions for nonsuit and a directed verdict should have been granted. The latter contention may be disposed of in considering the main points.

The offers to prove that Shapiro had forbidden salesmen to allow a customer to start the motor in any car on display unless they (the salesmen) were nearby, and that under no circumstances was a car to be driven on the lot, were properly excluded. Plaintiff was a business invitee, and, in the absence of some communication or notice that the proprietor was not responsible for the negligence of his employees or of another invitee, the proprietor owed him a duty of notice, and he had the right to assume that he would not be exposed to the danger of personal injury. It seems reasonable to conclude that plaintiff, upon being given permission by an employee to ''try'' a car, had the right to assume that the employer had authorized the employee to extend such invitation, and the restriction which the proprietor claimed to have placed upon his employees would not be binding upon plaintiff in the absence of notice thereof. Assuming that the

offered evidence was admissible, no prejudicial error occurred by its exclusion since defendant Lewis testified "we allow no one to drive a car on this lot except an employee."

■ Certain testimony of police officers (who arrived at the scene approximately five minutes after the accident), was introduced in evidence to the effect that Gjamara told them Lewis had given him permission to "try" the car; and that Lewis admitted doing so, but claimed he did not think Gjamara would attempt to "drive" it. Lewis denied making both statements. The evidence may be considered as impeaching testimony and therefore admissible against Lewis. ■ With certain exceptions which need not be enumerated here, the general rule is that if evidence is admissible for a specified purpose it may be received though inadmissible for some other purpose. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]; *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal.2d 525 [55 P.2d 850]; *Emery* v. *Pacific T. & T. Co.,* 43 Cal.App.2d 402 [110 P.2d 1079].)

■ Independent of the foregoing, we find recent decisions disapproving the long established rule that only statements made during, and spontaneously caused by the event, are admissible as res gestae. (*Heckle* v. *Southern Pacific Co.,* 123 Cal. 441 [56 P. 56]; *Williams* v. *Southern Pacific Co.,* 133 Cal. 550 [65 P. 1100].) In *Showalter* v. *Western Pacific R. R. Co.,* 16 Cal.2d 460, 465, 467, 468-469 [106 P.2d 895], it was held "that declarations which are voluntary and spontaneous and made so near the time of the principle act as to preclude the idea of deliberate design, though not precisely concurrent in point of time therewith, are regarded as contemporaneous and admissible." ". . . in our opinion the rule to be followed is that where a declaration is made under the immediate influence of the occurrence to which it relates and so near the time of that occurrence as to negative any probability of fabrication, said declaration is admissible." "The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i. e., while the nervous

excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence [2d ed.], sec. 1750.) The practice in this state heretofore has been to allow the trial court no discretion in determining the admissibility of alleged *res gestae* statements; however, under the view taken herein there is necessarily some element of discretion in the trial court." We are not in a position to say that the trial court abused its discretion. In view of the relaxed rule, and under all the facts of the case, the interval between the event and the statements does not seem to be unreasonable. The duty of the reviewing court is to consider only the legal sufficiency of the evidence to sustain the judgment. (*Medico-Dental etc. Co.* v. *Horton & Converse*, 21 Cal.2d 411 [132 P.2d 457].)

The claim is made that the court refused to permit a mechanic to testify that it was usual to have some free "play" in the shifting lever of the type and model of the automobile in question. Assuming the competency of the witness, no prejudice resulted in the ruling as other witnesses testified there was nothing wrong with the shifting lever.

On the examination of a police officer, it was contended by appellants that certain written notes made by him should be received in evidence. The notes in question were read to the jury.

The contentions that Shapiro exercised ordinary care in the operation of his used car lot; that Gjamara did not have permission to start the automobile, and that the failure to exercise ordinary care proximately caused the injuries to respondent (*Fennessey* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 141 [124 P.2d 51]) are definitely answered in the "special questions" propounded to the jury. In view of the evidence heretofore related, as a matter of law we are unable to hold to the contrary.

Appellants refer to the inapplicability of Vehicle Code section 402. Respondent does not claim that the verdict is based upon the owners' responsibility as set forth in that section. He stands solely upon the "negligent operation of the lot" theory. That the trial was conducted upon the latter theory appears from the transcript read as a whole. Appellants state in their opening brief that "Section 402 is not applicable to

injuries occurring on private property.'' It does not seem necessary to discuss this matter further.

Finally, appellants attack certain instructions given or refused. The first claimed error is in the following given instruction: ''From the fact that defendant Ed Shapiro owned the Chevrolet automobile at the time of this accident, which fact this defendant admits, the law allows you to draw the inference that the driver, Peter Gjarama was using that automobile with permission of the defendant Ed Shapiro at the time of the accident.'' The particular instruction could have been amplified to the effect that any such inference might be rebutted by contrary evidence. In other instructions the jury was fully instructed on the necessity of finding permission. They were instructed in substance that if Lewis had no authority from Shapiro to permit Gjamara to drive the automobile that Shapiro was not liable; that if Gjamara operated the car without proper permission Shapiro could not be held liable. In the light of the additional instructions, and the failure to request amplification of the particular instruction, it does not appear that appellants were harmed.

Appellants in their opening brief also claim error in the refusal to give an instruction relative to the mechanical condition of the car. At the time of oral argument appellants fairly and frankly admitted that after due consideration the point was without merit.

The further subdivisions of error above referred to relate to questions already considered.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 1, 1943. Edmonds, J., Traynor, J., and Schauer, J., voted for a hearing.