[Crim. No. 6741. Fourth Dist., Div. One. Mar. 31, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSEPH FRANCIS OLIVER, Defendant and Respondent.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, Terry J. Knoepp and Rupert A. Linley, Deputy District Attorneys, for Plaintiff and Appellant.

David H. Barry and Edward M. Fox, under appointments by the Court of Appeal, for Defendant and Respondent.

## OPINION

**AULT, J.**—The People appeal from the trial court's order granting defendant Joseph Francis Oliver a new trial after a jury convicted him of first degree robbery (Pen. Code, § 211) and found he used a firearm in the commission of the offense (Pen. Code, § 12022.5). We affirm the order because an improper, erroneous and prejudicial comment by the trial judge in the course of jury instructions deprived Oliver of a fair trial, and because the evidence supports the ruling.

The case comes to us in an unusual context. It is not necessary to discuss the evidence in detail. It is sufficient to state it was in conflict. Two men, one of whom wore a woman's wig, were involved in the robbery. The eyewitness identification of Oliver as the robber who wore the wig and used the gun may have been legally sufficient, but it was

arguably deficient in several respects. Both victims identified Oliver in court as the robber, but both had only a fleeting opportunity to make an identification during the course of the robbery. One of the victims was shown a picture of Oliver the day after the robbery occurred and failed to identify him.

Both victims identified Oliver when they were shown a series of five photographs several days after the robbery occurred. Of the five subjects presented, only Oliver was shown in a wig. The picture was taken by the police, using a wig belonging to Oliver's wife which had been seized the day after the robbery.

At the time of the robbery Oliver was 17 years old and a member of the United States Marine Corps. From the outset he denied participation in the robbery, both to the police who investigated the robbery and to his court-appointed counsel, who became convinced of his innocence. At the trial Oliver testified in his own behalf, denied involvement, and gave an account of his conduct and whereabouts on the day and evening of the robbery. He also produced several witnesses who testified in his behalf. While these witnesses did not provide Oliver with a complete alibi, their testimony, if believed, made it highly unlikely that Oliver could have participated in the robbery. The second robber was never identified or found.

After both sides rested, the trial judge announced to counsel that, in conjunction with CALJIC No. 17.19, he intended to make the following comment to the jury: "My comment as to the credibility of the witnesses is as follows: *With reference to the defense witnesses, including the defendant himself, I have never in my experience as a lawyer and a judge seen an array of witnesses whose credibility is so doubtful.* However, it is your responsibility, not mine, to determine credibility in accordance with the criteria standards heretofore recited." (Italics added.) Oliver's attorney objected to the proposed comment, stating it was unfair to the defendant. The deputy district attorney gave it his blessing. During the course of the instructions to the jury the court commented exactly as set out above.

After the jury returned a guilty verdict on the robbery charge, Oliver's attorney moved for a new trial, specifying as grounds:

(1) the verdict is contrary to the law or evidence (Pen. Code, § 1181, subd. 6), and

(2) The court has misdirected the jury in a matter of law (Pen. Code, § 1181, subd. 5).

Under (1), Oliver argued the insufficiency of the evidence to support the verdict; in his written points and authorities, he urged the fundamental unfairness and errors in the court's comment to the jury.

By a separate motion, Oliver's attorney requested the court to provide funds for a polygraph test. Stressing his belief that Oliver had been an untruthful witness and commenting "It will be interesting to see the results," the trial judge ordered the polygraph examination. After an experienced polygraph examiner concluded that Oliver was telling the truth when he denied involvement in the robbery, the trial judge ordered an examination by two county psychiatrists under sodium pentothal or sodium amytal. After both of these experts reported on the test and expressed their conclusion Oliver was telling the truth in denying complicity in the robbery, the trial judge granted the motion for new trial, stating: "It seems like the fair thing would be to give him another shot at it; . . . the equities lie in favor of the defendant, and . . . he should be afforded another opportunity." When asked by the deputy district attorney to state the ground upon which the motion was granted, the judge said: "In the interests of justice." The minute order states: "Defendant's motion for a new trial is granted by the Court," without reciting any ground.

## DISCUSSION

The People urge reversal of the order affording Oliver a new trial because it was granted on nonstatutory grounds and because the trial court relied upon legally unauthorized tests in arriving at its decision.

■ Although it has been stated that motions for new trial must be made on one or more of the grounds enumerated in Penal Code section 1181 (see, e.g., *People* v. *Sainz,* 253 Cal.App.2d 496, 500 [61 Cal.Rptr. 196]), new trials are frequently granted on nonstatutory grounds "where the failure to do so would result in a denial of a fair trial to a defendant in a criminal case." (*People* v. *Davis,* 31 Cal.App.3d 106, 109 [106 Cal.Rptr. 897].) The duty of a trial court to afford every defendant in a criminal case a fair and impartial trial is of constitutional dimension. Where the procedure has fallen short of that standard, an accused has been denied due process, and the inherent power of the court to correct matters by granting a new trial transcends statutory limitations (*People* v. *Davis, supra,* 31 Cal.App.3d 106, 110).

■ We interpret the trial judge's order, including his oral statement he was granting the new trial "in the interests of justice," as expressing a belief Oliver had not received a fair trial. In view of the trial judge's unjustified comment to the jury (discussed later), we agree and uphold the order.

■ The order granting Oliver a new trial may also be affirmed as having been granted on the ground the verdict was contrary to the evidence. Where evidentiary nonsupport is one of the grounds upon which a motion for new trial is made (in a criminal case) and the order granting the new trial does not specify the grounds upon which it was granted, it may be presumed to have been granted on the ground of insufficiency of the evidence unless the order or the trial judge's oral decision discloses *directly* and *clearly* that such ground was specifically excluded as a basis for granting the motion. (*People* v. *Mattmueller,* 25 Cal.App.2d 418, 421 [77 P.2d 504]; *People* v. *Megladdery,* 40 Cal.App.2d 748, 771-774 [106 P.2d 84]; *People* v. *Perkin,* 87 Cal.App.2d 365, 367 [197 P.2d 39].)

Here the minute order granting the new trial does not specify the grounds. The trial court's remarks "It seems like the fair thing would be to give him another shot at it." and " . . . the equities lie in favor of the defendant, and . . . he should be afforded another opportunity," as well as his statement he was granting the new trial "in the interests of justice" are at best ambiguous. They do not exclude insufficiency of the evidence as a basis for granting the motion.

As stated in *People* v. *Robarge,* 41 Cal.2d 628, 633 [262 P.2d 14]: "In passing upon a motion for a new trial the judge has a very broad discretion and is not bound by conflicts in the evidence, and reviewing courts are reluctant to interfere with a decision granting or denying such a motion unless there is a clear showing of an abuse of discretion." No abuse of discretion has been shown in this case.

■ Under the circumstances of this case, we are not concerned with the reasoning process which prompted the trial judge to grant a new trial or with the question whether he made use of extraneous information in reaching his ultimate decision. Had the motion for new trial been denied, the judge's improper and unjustified comment on the credibility of Oliver and the defense witnesses would have required a reversal of the judgment.

■ The constitutional provision permitting a judge to make "such comment on the evidence and the testimony and credibility of any witness as in [his] opinion is necessary for the proper determination of the cause" is now contained in article VI, section 10, of the California Constitution, and is substantially the same as the initial constitutional provision which was added by amendment in 1934. This provision has never been interpreted as sanctioning a comment of the kind made by the judge in this case. A judge's power to comment on the evidence is not unlimited. He may not withdraw material evidence from the jury's consideration or distort the testimony, and he may not, in the guise of comment, control the verdict by a direction either directly or impliedly made. (*People* v. *Brock,* 66 Cal.2d 645, 650 [58 Cal.Rptr. 321, 426 P.2d 889].)

■ The vice of the comment made by the trial judge in this case—generally discrediting Oliver and all the defense witnesses, without reference to either reason or record, and leaning solely on the judge's experience and background—is that it hinders rather than helps the jury to perform its duty in properly considering the case. An expression by the judge of his opinion that defendant and all of the defense witnesses were not worthy of belief without stating any reason and without a discussion of any evidentiary basis allows the jurors to discredit and disbelieve such witnesses without determining the question of credibility in accordance with proper instructions. (*People* v. *Brock, supra,* 66 Cal.2d 645, 651.) Where, as here, the entire case hinged upon the credibility to be afforded the witnesses, such a comment was tantamount to a directed verdict of guilty.

More important than these general considerations, is the fact the comment was both unfair and unjustified. A detailed consideration of all the evidence reveals there were minor discrepancies in the testimony of some of the defense witnesses just as there were similar discrepancies in the testimony of some witnesses who testified for the prosecution. Such discrepancies do not necessarily mean the witnesses should be discredited (see CALJIC No. 2.21), and they provide no basis for the general discrediting comment made by the judge here.

If, as the People urge, we should reverse the order granting a new trial because the court improperly considered the results of the polygraph and sodium pentothal tests in making its ruling, Oliver would be entitled to appeal from the judgment of conviction which would follow. As we have pointed out, such an appeal would necessarily result in a reversal of the

judgment because of the comment made by the judge in his instructions to the jury. This would be so without reference to the test results. No useful purpose would be served by requiring such an appeal.

The order is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.